RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
Meredith R. Miller
One Penn Plaza, Suite 2430
New York, NY 10119
Telephone: (212) 382-1600
mrapaport@rapaportlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EMANUEL AMADIS and JAMES JIMENEZ, individually        DOCKET NO.:
and on behalf of all others similarly situated,

                            Plaintiffs,        **CLASS ACTION
                                                  COMPLAINT**

                vs.

NEWCASTLE REALTY SERVICES, LLC d/b/a
NEW CASTLE REALTY and d/b/a NEW CASTLE
REALTY SERVICE; MARGARET STREICKER
PORRES; 146 EAST 19TH STREET LLC; GSA
MANAGER I INC.; 120 EAST 19TH STREET GSA I
LLC; 101 WEST 78TH LLC; and all related entities.

                            Defendants.
-------------------------------------------------------------X

        Plaintiffs EMANUEL AMADIS ("Amadis") and JAMES JIMENEZ ("Jimenez")

(collectively, the "Plaintiffs") individually and on behalf of all others similarly situated, as

class representatives, upon personal knowledge as to themselves and upon information and

belief as to other matters, by and through their attorneys, RAPAPORT LAW FIRM, PLLC,

as and for their Complaint, allege:

                        <u>**PRELIMINARY STATEMENT**</u>

        **The Nature of Plaintiffs' Claims:**

        1.        This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq.* and the collective action provision of 29 U.S.C. § 216(b) to recover

unpaid overtime wages, minimum wages, unlawful deductions, and other wages owed to

Plaintiffs and similarly-situated superintendents and porters who have worked at apartment buildings owned and/or operated by Defendants in New York City.

2.      Plaintiffs also bring this action for themselves and on behalf of similarly situated current and former employees of defendants pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

3.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without receiving applicable minimum wage or appropriate compensation for hours over 40 per week that they worked.  Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

**The Newcastle Enterprise:**

4.      At all relevant times, Defendants were and still are a centrally managed real estate enterprise (hereinafter the "Newcastle Enterprise") that owns, controls, and manages apartment buildings (the "Newcastle Buildings") in New York City.  Ultimate control over this enterprise is exercised by defendant Margaret Streicker Porres ("Porres"), who is President of defendant Newcastle Realty Services, LLC d/b/a New Castle Realty and d/b/a New Castle Realty Service ("Newcastle Realty").

5.      The Newcastle Buildings include, *inter alia*, more than fifty (50) apartment buildings with over 2,500 residential housing units that are owned, controlled and/operated by the Newcastle Enterprise.

6.      This Collective and Class Action seeks redress for state and federal wage violations that Defendants, as joint employers, inflicted on superintendents and porters who worked at the Newcastle Buildings during the applicable FLSA and NYLL statute of limitations periods.

2

7.     At all relevant times, the Newcastle Enterprise had a principal place of business at 270 Madison Avenue, 19th Floor, New York, NY 10016, from which the Newcastle Enterprise owned, operated and managed the Newcastle Buildings.

8.     The Newcastle Enterprise implemented centralized wage and personnel policies that uniformly applied toward superintendents and porters working at the Newcastle Buildings.    These unlawful policies and procedures included, *inter alia*, refusing to compensate superintendents and porters for hours of work in excess of forty (40) hours per week and issuing paychecks that purposely obfuscated and/or concealed the names and status of Defendants as the employers of superintendents and porters.

9.     Title to each of the Newcastle Buildings is nominally vested in a limited liability company (collectively, the "Title-Holding Entities"), each of which is owned and controlled by the Newcastle Enterprise.

10.     The Newcastle Enterprise's common wage and personnel policies and procedures were implemented by: (a) Porres; (b) Adam Reisman ("Reisman"), who had the title of Operations Manager; and (c) David Drumheller ("Drumheller"), who was Head of Operations through June 2016 and was Amadis' initial supervisor.

## JURISDICTION AND VENUE

11.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

12.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Southern District and this is the judicial district in which the events giving rise to the claims occurred.  Defendants have facilities and employed Plaintiffs and Class Members in this district.

13.    This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiffs**

### *Amadis:*

14.    Amadis is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

15.    Beginning in or about October 2014 through approximately March 2015, Amadis worked as a floating porter for the Newcastle Enterprise, in which capacity he performed repairs and maintenance work at approximately ten Newcastle Buildings in Brooklyn and the Bronx.

16.    During his employment as a porter, Amadis was supposed to be paid an hourly rate of pay for his work (initially, $13.00 per hour, which was later raised to $13.50 per hour).  In practice, Defendants refused to pay any compensation for Amadis' overtime hours (i.e., for hours worked above 40 hours per week).

17.    Beginning in approximately March 2015 until in or about September 2015, Amadis worked as a superintendent, in which capacity he worked for Defendants at one building located at the Upper West Side of Manhattan and, thereafter, at two buildings in Brooklyn.

18.    In his capacity as a superintendent, Amadis received (as he had as a porter) a flat weekly paycheck with no compensation whatsoever for overtime work (i.e., hours

worked in excess of forty hours per week).  As a superintendent, Amadis was required, as a condition of his employment, to remain on-call twenty-four hours per day, seven days per week.  Carrying out his basic responsibilities (not including on-call time) involved an average workweek of 80 hours for Amadis.

19.     Reisman directed Amadis to be on-call 24 hours per day, seven days a week, without any overtime remuneration.

20.     In a letter dated December 23, 2014, Drumheller set forth Amadis' hourly rate of pay.

*Jimenez:*

21.     Jimenez is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

22.     Commencing in or about September 2015 through approximately May 2016, Jimenez worked as a superintendent at two, five-floor Newcastle Buildings located in Brooklyn, New York.

23.     Jimenez received no compensation for overtime work (i.e., hours worked in excess of forty hours per week).

24.     Jimenez was required, as a condition of his employment, to remain on-call twenty-four hours per day, seven days per week.  It is conservatively estimated that Jimenez worked more than 80 hours in a typical workweek, not including additional hours that he remained on call for tenant requests and complaints.

25.     Both Amadis and Jimenez were repeatedly and pervasively paid substandard wages in that they were: (a) denied full pay for all hours worked, particularly no pay whatsoever for hours worked beyond the first forty hours per week; (b) denied overtime compensation despite working far more than 40 hours per workweek; and (c) subjected to

unlawful wage deductions, including being required to pay for work-related expenses out of their own wages without reimbursement.

**Defendants**

*Margaret Streicker Porres*:

26.     Porres maintains a principal office for the conduct of business at 270 Madison Avenue, 19th Floor, New York, NY 10016.

27.     Upon information and belief, Porres resides in the State of New York.

28.     Upon information and belief, during the time periods relevant to this Complaint, Porres was managing member and/or senior executive of all corporate defendants herein, including but not limited to the Title-Holding Entities.

29.     Porres is the founder of – and she exercises ultimate decision-making responsibility and operational control for – the Newcastle Realty and the Title-Holding Entities.

30.     Porres was (and she continues to be) President of Newcastle Realty Services.

31.     Porres is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

32.     Porres determined the wages and compensation of the employees of Defendants, including the Plaintiffs, maintained employee records, and had the authority to hire and fire employees.

33.     Upon information and belief, Porres is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

**The Defendant Entities that are under the Common Control of the Newcastle Enterprise**

34.     Upon information and belief, during time periods relevant to the claims set forth in this complaint, Porres exercised unified management and control over Newcastle

Realty, as well as the Title-Holding Entities, all of which jointly comprise the Newcastle Enterprise.

35.    At all times hereinafter mentioned, Newcastle Realty Services, LLC d/b/a New Castle Realty and d/b/a New Castle Realty Service, was and is a domestic corporation doing business in New York State.

36.    At all times hereinafter mentioned, 146 East 19th Street LLC was and is a limited liability company organized and existing pursuant to the laws of the State of New York.

37.    Upon information and belief, 146 East 19th Street LLC was established and controlled by the Newcastle Enterprise for the purpose of nominally holding title to 146 East 19th Street, Brooklyn, New York, where Plaintiffs performed work.

38.    At all times hereinafter mentioned, 120 East 19th Street GSA I LLC was and is a limited liability company organized and existing pursuant to the laws of the State of New York.

39.    Upon information and belief, 120 East 19th Street GSA I LLC was established and controlled by the Newcastle Enterprise for the purpose of nominally holding title to 120 East 19th Street, Brooklyn, New York, where Plaintiffs performed work.

40.    At all times hereinafter mentioned, GSA Manager I Inc. was and is a limited liability company organized and existing pursuant to the laws of the State of New York.

41.     Upon information and belief, GSA Manager I Inc. was "Manager" of defendants 146 East 19th Street LLC and 120 East 19th Street GSA I LLC.

## CLASS ACTION ALLEGATIONS

42.    Amadis and Jimenez bring this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the following Plaintiffs Classes:

*FLSA Class:*

43.    The FLSA Class refers to all persons who are, or have been, employed as superintendents and porters at the Newcastle Buildings (the "FLSA Collective Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

44.    This action claims that Defendants violated the wage and hour provisions of FLSA by depriving Plaintiffs Amadis and Jimenez, as well as others similarly situated to them, of their lawful wages.  Upon information and belief, there are many similarly situated current and former superintendents and porters who worked at the Newcastle Buildings during the three-year period preceding the filing of this complaint, who have been underpaid in violation of the FLSA and who would benefit from court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

45.    At all relevant times, Defendants are aware and have been aware of the requirements to pay Amadis and Jimenez and FLSA Collective Plaintiffs at an amount equal to the rate of one and one-half times their regular rates of pay for all hours worked each workweek above forty, yet they purposely and willfully chose not to do so.

46.    The FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of Defendants.

47.    Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, unpaid overtime, an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

*The New York Class – Rule 23 Class Allegations:*

48.    The New York Class refers to all persons who are, or have been, employed as superintendents and porters at the Newcastle Buildings on or after the date that is six years

before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

49.    The Rule 23 Class Members ("New York Class") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the records of Defendants.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

50.    The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

51.    This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical.  Membership in the Plaintiffs Classes will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) Commonality:  Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper

under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b). For example, the Newcastle Enterprise's practice and policy of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class. Upon information and belief, the Newcastle Enterprise's policy and practice of unlawful deductions is applicable class-wide to Superintendents and Porters at all Newcastle Buildings, and involves common legal and factual issues.

(c) Typicality: The claims of Amadis and Jimenez are typical of the claims of the Plaintiffs Classes. Amadis, Jimenez, and all members of the Plaintiffs Classes sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state and federal law, as alleged herein. Upon information and belief, all of the Rule 23 Class Members were subject to the same corporate practices of the Newcastle Enterprise of failing to pay overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue accurate and complete wage statements to employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class

Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Amadis and Jimenez are informed and believe, and based thereon allege, that Defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, Class certification is proper under Fed.R.Civ.P. Rule 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: Amadis and Jimenez are adequate representatives of the Plaintiffs Classes, in that their claims are typical of those of the Plaintiffs Classes and they have the same interests in the litigation of this case as the Class Members. Amadis and Jimenez are committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have been diligent in investigating the claims of Amadis, Jimenez and putative Class Members. Upon information and belief, Amadis and Jimenez are not subject to any individual defenses unique from those applicable to the Class.

52.    Proceeding as a class action provides Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing risks of retaliation.

## **COMMON FACTUAL ALLEGATIONS**

11

53.    As described herein, Defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and NYLL (Article 19), and unlawfully deducted sums from wages in violation of the New York Wage Payment Act, Labor Law § 190, et seq., the New York Labor Law § 650, et seq., and New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Among other means, Defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation. In addition, Defendants took unlawful deductions from the wages of Amadis and Jiminez by requiring them to pay the cost of "tools of the trade."

54.    Upon information and belief, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55.    At all relevant times, all of the Defendants were joint employers of Amadis and Jimenez and the FLSA Class members within the meaning of the FLSA and NYLL.

56.    Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise working on goods or materials that have been moved or produced for commerce. The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000. Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

57.    At all relevant times, the Newcastle Enterprise, and its constituent entities, were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, operating a group of more than fifty (50) apartment buildings that are nominally titled in different corporate names but which are centrally owned and controlled by Defendants.

*Defendants Constitute Joint Employers*

58.    Defendants, collectively as the Newcastle Enterprise, had the power to hire and fire Plaintiffs and putative Class Members, supervised and controlled Plaintiffs' and putative Class Members' work schedules and conditions of employment, determined the rate and method of paying Plaintiffs and putative Class Members and maintained Plaintiffs' and putative Class Members' employment records.

59.    Plaintiffs are informed and believe that at all relevant times, the constituent individuals and entities of Newcastle Enterprise functioned as a unified enterprise, namely:

(a) Ultimate control of Newcastle Buildings is exercised by Porres;

(b) Although the Newcastle Buildings are titled in different corporate names, Porres has substantial ownership interests in the entities that nominally hold title to the Newcastle Buildings, and Porres exercised operational control over wage and personnel policies and practices;

(c) Buildings of the Newcastle Enterprise are centrally managed, and Newcastle Realty is an alter ego of each entity that holds title to the Newcastle Buildings;

(d) The Newcastle Enterprise has publicized its status as a real estate business that focuses primarily on multiple family apartment buildings that was founded by and is controlled by Porres; and

(e) The Newcastle Enterprise issues uniform personnel policies and directives;

60.    Porres has an economic interest in the Newcastle Buildings.

61.    Defendants each had either functional and/or formal control over terms and conditions of work and over the policies and practices with respect to the employment and compensation of the Plaintiffs.

62.    Upon information and belief, the Corporate Defendants are either alter egos of each other, and/or the Corporate Defendants failed to operate as entities legally separate and apart from themselves by, among other things:

(a) Failing to adhere to the corporate formalities necessary to operate Corporate Defendants as corporations;

(b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) Transferring assets and debts freely as between all Corporate Defendants;

(d) Operating Corporate Defendants for Porres' own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that benefitted Porres; and

(e) Other actions evidencing a failure to adhere to the corporate form.

63.    Upon information and belief, Defendants run the business of all of the Newcastle Enterprise as one operation, and Defendants' operations were interrelated and united under the ultimate control of Porres.

64.    On the Newcastle Enterprise's website, Defendants reprint various articles from real estate publications that describe the growth of the Newcastle Enterprise since its founding by Porres in 2004. (see http://www.newcastlenyc.com/architectural-ambition/#iLightbox[gallery12063]/0). In this February 2013 *Architectural Ambition* article, which Newcastle republished on its website, Porres describes the growth of the Newcastle Enterprise:

> I founded Newcastle in 2004. Newcastle kicked off with the acquisition of a portfolio of nine buildings on 22nd Street in Chelsea, and it grew from there. We started by doing townhouse-sized properties in the West Village and Chelsea. Currently, there are 65 people working for Newcastle. We're running properties in Manhattan, Brooklyn and Queens.

65.    Upon information and belief, Newcastle Realty's number of employees, as well as the number of buildings that Porres and Newcastle control, have grown since the foregoing article was published in 2013.

66.    Consistent with their policies and patterns or practices, Defendants harmed Plaintiffs individually, as set forth below.

*Defendants' Wage and Hour Violations*

**AMADIS**

*Porter Work Period (10/14 – 3/15)*

67.     Amadis began working for the Newcastle Enterprise as a porter, in which capacity he was sent to Newcastle Buildings in Brooklyn and Manhattan each workday.

68.     Amadis was required to use his own tools, which were confiscated from him (together with his other belongings) when he was terminated from his job.

69.     As a porter, Amadis would handle issues at various Newcastle Buildings that involved, among other things, painting; fixing sinks; installing cabinets; mopping; plastering; installing doors; installing tiles; installing new radiators in apartments; painting basement floors; and various other repair, upgrade and maintenance work.

70.     Amadis typically began each workday at approximately 7:30 a.m., and he typically worked until 6:30 in the evening.   Therefore, Amadis had a typical workday consisting of 10 hours.  In a typical workweek (five days), Amadis worked 50 hours.  But he was only paid for 40 hours of work per week, with no pay for hours above 40 per week.

71.     Amadis received paychecks that purported to pay him by the hour, but in reality, Amadis was not paid any sum for overtime hours and received, in effect, a flat salary of approximately $520.00 per workweek.

72.     Although some of Defendants' paystubs purported to set forth an hourly rate, Amadis' pay was the same regardless of the number of hours that he worked.

73.     Amadis performed work at approximately ten Newcastle Buildings located in both Brooklyn and Manhattan.

*Superintendent for 101 West 78th Street (3/15 – 7/15)*

74.     From approximately March 2015 through late July 2015, Amadis was superintendent of 101 West 78th Street, New York, NY (101 West 78th), and he was on call to address repair requests and emergent matters twenty-four hours per day/seven days per week.

75.     At 101 West 78th, Amadis' job responsibilities included: maintaining the building's appearance, cleaning, mopping, repairs, plastering, minor plumbing, accepting oil

deliveries, communicating with tenants, sweeping the sidewalk, recycling, garbage, cleaning construction-related dust, removing discarded items, fixing leaks, patching drywall, unclogging toilets, communicating with contractors, and serving as point of contact for resident service requests.

76.    Amadis was required to be on-call, 24 hours per day, seven days a week, including holidays, to address emergent issues. The Defendants and the tenants would contact Amadis by his cellular telephone.

77.    When Amadis first began performing work at 101 West 78th, Reisman told Amadis that he was required to be on-call twenty-four hours per day

78.    During the entire period of Amadis' employment at 101 West 78th, he did not reside at 101 West 78th and, instead, he resided at a different location.

79.    Amadis was not provided with a porter to assist him in carrying out his duties. Consequently, Amadis was required to handle trash removal seven days per week.  In the winter months, he was required to be on-site seven days per week for boiler maintenance (flushing water and addressing issues that would cause the boiler to stop functioning, including late at night).  Because of the age of the boiler, these issues demanded constant attention, at all hours of the day and night.

80.    As a superintendent, Amadis worked approximately 80 hours per week, not including on-call time.

*Superintendent for 149 East 19th Street and*
*250 East 19th Street, Brooklyn, NY (7/15 –9/15)*

81.    Beginning in or about July 2015 through in or about late September 2015, Amadis was superintendent of 140 East 19th Street and 250 East 19th Street, Brooklyn, NY (the "19th Street Buildings").  As before, he was required to be on-call 24 hours per day.

82.    The 19th Street Buildings had a total of 84 apartments.  Because the 19th Street Buildings suffered from maintenance issues, Amadis often performed work around-the-

clock. For example, because the electrical breakers were insufficient for electricity consumed at the 19th Street Buildings, Amadis had to re-set the circuit breakers at all hours.

83.    At all times, Amadis was required, as a condition of his employment, to pay, from his personal funds, for his tools, which included a screw guns, saw, and tile cutter, among other tools.

84.    Throughout his employment, Defendants never instructed Amadis to record the number of hours that he worked.  Instead, Defendants compensated Amadis with flat sums with no pay for overtime hours. This policy was the same during Amadis' work as both a porter and as a superintendent.

**JIMENEZ**

85.    Jimenez worked as the superintendent of the 19th Street Buildings from approximately late-summer 2015 through in or about May 2016.

86.    Like Amadis, Jimenez was responsible for maintaining the 19th Street Buildings and attending to tenant repair requests.  He was required to be on-call twenty four hours per day, seven days per week.

87.    Throughout his employment as superintendent of the 19th Street Buildings, Jimenez worked approximately 80 hours per week, not including on-call time.

88.    Jimenez was required to supply his own tools of the trade, including hand tools and power tools.

89.    Jimenez, like Amadis, had to be on-call at all hours to re-set electrical circuit breakers and deal with an onerous and steady stream of repair issues that plagued the buildings.

### AS AND FOR A FIRST  CAUSE OF ACTION
#### FLSA Minimum Wage Violations
#### (FLSA Class)

90.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

91.    At all times relevant to this action, Defendants were Plaintiffs' employers and employers of the putative FLSA class members within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

92.    At all times relevant to this action, Defendants were engaged in commerce or in an industry and/or activities affecting commerce.

93.    Defendants failed to pay Amadis, Jimenez, and putative FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a), including, *inter alia*, paying no wages for hours worked above the first forty hours per week.

94.    Defendants' failure to pay Plaintiffs and the putative FLSA class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

95.    Plaintiffs and FLSA Class Members were damaged in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (FLSA Class)

96.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

97.    At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed members of the FLSA Class as superintendents and porters, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

98.     Plaintiffs are informed and believe, and thereon allege, that Defendants have required, or require, the FLSA Class Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

99.     Plaintiffs and members of the putative FLSA Class routinely worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

100.    Plaintiffs propose to undertake appropriate proceedings to have such putative FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to join with the Court.

101.    Defendants' violations of the FLSA's overtime provisions were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

102.    As a result of the foregoing, Plaintiffs seek judgment against Defendants on their own behalf, and on behalf of those putative FLSA Class Members similarly situated who file written consents to join in this action, for all unpaid wages, including minimum wage and overtime wages owed by Defendants to Plaintiffs and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (New York Class)

103.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

104.    The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiffs.

105.    Defendants, in violation of the NYLL, willfully paid Plaintiffs and the FLSA Class members less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

106.    Plaintiffs (and the Class Members) were damages in an amount to be determined at trial.

## AS AND FOR AN FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (New York Class)

107.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

108.    Defendants, in violation of N.Y. Lab. Law §§ 190 and 650 et seq., and supporting regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half the regular rate of pay for each hour worked in excess of forty hours in a workweek.

109.    As a result of Defendants' knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per workweek, Plaintiffs are entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

110.   All members of the putative New York Class are similarly entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS AND FOR A FIFTH CAUSE OF ACTION
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a).**
**(New York Class)**

111.   Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

112.   In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiffs, including, *inter alia*, deductions by requiring superintendents to spend their own money on work-related expenses, which further reduced wages below the required minimum wage, including but not limited to, tools of the trade to complete mandated work.

113.   As a result of the foregoing, Plaintiffs seek judgment against Defendants on their own behalf, and on behalf of putative New York Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

### AS AND FOR A SIXTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**(New York Class)**

114.   Plaintiffs, on behalf of themselves and the New York Class members, repeats and re-allege and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

115.   The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

116.    Defendants willfully failed to provide Plaintiffs and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

117.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices**
**(New York Class)**

118.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeats, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

119.    The NYLL and WTPA, as well as the NYLL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 141, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

120.    From its enactment on April 9, 2011, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (later amended to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's

rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosures.

121.    In violation of NYLL § 191, Defendants failed to furnish Plaintiffs, at the time of hiring (and annually for those years prior to the amendment) or whenever there was a change to their rate of pay, with wage notices containing the rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law; in violation of the NYLL § 195(1).

122.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and New York Class Members are entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years before the filing of this Complaint, through February 27, 2015, the sum $50 per work week, up to $2,500; and (b) from February 27, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

### AS AND FOR A EIGHTH CAUSE OF ACTION
**Declaratory Judgment**
**(FLSA Class and New York Class)**

123.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

124.    This action provides a ripe and justiciable case or controversy.

125.    It is just and equitable that the Court declares the rights and other legal relationships of the parties.

126.    Plaintiffs, the FLSA Class and New York Class are entitled a declaration that Defendants acts are in violation of the FLSA and NYLL.

## RELIEF SOUGHT

**WHEREFORE,** the Plaintiffs, Emanuel Amadis and James Jimenez, on behalf of themselves and the FLSA Class and the New York Class, respectfully request that the Court grant the following relief:

1.    Designation of this action as a collective action on behalf of the FLSA Class members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing Plaintiffs and his counsel to represent the FLSA Class Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class members and appointing Plaintiffs and his counsel to represent the class;

3.    An order tolling the statute of limitations;

4.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the FLSA as to Plaintiffs, the FLSA Class and the New York Class;

5.    That the Court declare, adjudge and decree that Defendants violated the overtime provisions of the FLSA as to Plaintiffs, the FLSA Class and the New York Class;

6.    That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay minimum wages and overtime compensation as required under the FLSA and NYLL;

7.    That the Court declare, adjudge and decree that Plaintiffs Amadis and Jimenez and the FLSA Class Members were at all times relevant hereto, and are, entitled to be paid (a) minimum wages; (b) overtime for work beyond 40 hours in a week; and (c) remuneration for unlawful deductions; and that the amounts to which Plaintiffs, the FLSA Class and the New York Class are entitled is to be doubled as liquidated damages and awarded thereto;

8.    That the Court make an award to Plaintiffs, the FLSA Class and the New York Class of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

9.    That the Court make an award to Plaintiffs and the New York Class of reimbursement for all unlawful deductions;

10.    For all other Orders, findings and determinations identified and sought in this Complaint;

11.    For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

12.    For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

13.    Declaring that Defendants violated the notices and record keeping provisions of NYLL and WTPA;

14.    An award of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

15.    An award of statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b);

16.    A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

17.    Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.


Dated: October 20, 2017                    **RAPAPORT LAW FIRM, PLLC**


By:                    /s/
_____
Marc A. Rapaport, Esq.
Meredith R. Miller, Esq.
Attorneys for Plaintiffs
 *Emanuel Amadis and*
 *James Jimenez*
and the Plaintiff Classes
One Penn Plaza
250 West 34th Street, Suite 2430
New York, NY 10119
Ph: (212) 382-1600