

www.millerlaw.nyc

Meredith R. Miller, Esq.

Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016

Tel: (347) 878-2587
Fax: (866) 495-6719
meredith@millerlaw.nyc

May 15, 2018

**Via ECF and U.S. Mail (Courtesy Copy)**
Honorable William H. Pauley, III, U.S.D.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

    Re:    *Amadis, et al. v. Newcastle Realty Services, LLC, et al.*
             Docket No. 17-cv-8116

Dear Judge Pauley:

    This firm represents Plaintiffs Emanuel Amadis and James Jimenez (collectively "Plaintiffs") in the above-referenced matter. Pursuant to Your Honor's Order dated May 10, 2018 (DE 38) (the "Order"), Plaintiffs write jointly with Defendants to request that the Court approve the settlement agreements (the "Agreements"), which are submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiffs' counsel further requests that the Court approve Plaintiffs' attorney fees and costs.

    **I.**    **Introduction.**

    In a Complaint filed on October 10, 2017, Plaintiffs assert wage and other related claims arising from work that they performed as superintendents at Defendants' apartment buildings. Plaintiffs allege Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") violations and seek: (1) unpaid overtime, (2) repayment of illegal deductions (NYLL, Article 19, § 193, 12 N.Y.C.R.R. § 2.10(a)), (3) penalties for wage statement and wage notice violations pursuant to NYLL § 195(3) and/or 198(1-b); (4) liquidated damages, and (5) attorneys' fees and costs. Defendants have not yet filed an Answer or otherwise responded to the Complaint; this deadline was extended by the Court, as requested by the parties to allow for settlement discussions before incurring substantial costs.

    Given that Plaintiffs' claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), as held by the Order, the Agreements must be approved by this Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) (citations and quotation marks omitted).

## II. Plaintiffs' Claims for Unpaid Wages and Wage Statement & Notice Violations.

Plaintiffs allege that they were not paid for overtime hours despite a weekly work schedule that required each of them to work more than 40 hours per week. Plaintiffs also allege wage statement violations under NYLL § 195(1)(a) (totaling $5,000 per Plaintiff) and wage notice violations pursuant to NYLL § 198(1-b) (totaling $5,000.00 per Plaintiff).

**Emanuel Amadis**

*Porter Work Period (10/14 – 3/15)*

From approximately October 2014 through March 2015, Plaintiff Emanuel Amadis ("Amadis") worked for the Defendants as a porter, in which capacity he was sent to approximately ten of Defendants' buildings in Brooklyn and Manhattan each workday. As a porter, Amadis would handle issues at various buildings that involved, among other things: painting, fixing sinks, installing cabinets, mopping, plastering, installing doors, installing tiles, installing new radiators in apartments, painting basement floors, and various other repair, upgrade and maintenance work. During this time, Amadis alleges that he averaged 10 hours of overtime per week. Amadis alleges that he received paychecks that purported to pay him by the hour, but in reality, he was not paid any sum for overtime hours and received, in effect, a flat salary of approximately $520.00 per workweek.

*Superintendent for 101 West 78th Street (3/15 – 7/15)*

From approximately March 2015 through late July 2015, Amadis was superintendent of 101 West 78th Street, New York, NY ("101 West 78th"), and he alleges that he was required to be on call twenty-four hours per day/seven days per week. At 101 West 78th, Amadis' job responsibilities included: maintaining the building's appearance, cleaning, mopping, repairs, plastering, minor plumbing, accepting oil deliveries, communicating with tenants, sweeping the sidewalk, recycling, garbage, cleaning construction-related dust, removing discarded items, fixing leaks, patching drywall, unclogging toilets, communicating with contractors, and serving as point of contact for resident service requests. Amadis was not provided with a porter to assist him in carrying out his duties. As a superintendent at 101 West 78th, Amadis alleges that he worked approximately 80 hours per week, not including on-call time and he was paid a flat salary of $540 per week, which provided no remuneration whatsoever for overtime work.

*Superintendent for 149 East 19th Street and 250 East 19th Street, Brooklyn, NY (7/15 –9/15)*

Beginning in or about July 2015 through in or about late September 2015, Amadis was superintendent of 140 East 19th Street and 250 East 19th Street, Brooklyn, NY (the "19th Street Buildings"). As before, he alleges that he was required to be on-call 24 hours per day. The 19th Street Buildings had a total of 84 apartments. Because the 19th Street Buildings suffered from maintenance issues, Amadis alleges that he often performed work around-the-clock. As a superintendent at the 19th Street Buildings, Amadis alleges that he worked approximately 80 hours per week, not including on-call time, and he was paid a flat salary of $540 per week.

*Loss of Personal Property*

Amadis additionally alleges that, when he was terminated from employment with Defendants, his personal property, which was in storage on Defendants' premises while he attempted to find housing, was either lost or stolen.

*Calculation of Amadis' Overtime*

Given these allegations, in calculations shared with Defendants, Plaintiffs estimated Amadis' unpaid overtime at about $25,000, plus wage statement and wage notice violations totaling $10,000. While difficult to quantify exactly, Plaintiffs also approximated the value of Amadis' personal property at $10,000.

**James Jimenez**

*Superintendent for the 19th Street Buildings*

James Jimenez ("Jimenez") worked as the superintendent of the 19th Street Buildings from approximately late-summer 2015 through in or about May 2016. Like Amadis, Jimenez was responsible for maintaining the 19th Street Buildings and attending to tenant repair requests. He alleges that he was required to be on-call twenty four hours per day, seven days per week. Like Amadis, Jimenez was burdened with constant electrical issues due to the inadequate breakers. Jimenez alleges that, throughout his employment as superintendent of the 19th Street Buildings, he worked approximately 80 hours per week, not including on-call time, and he was paid a flat salary of $591.35 per week.

*Calculation of Jimenez' Overtime*

Given these allegations, in calculations shared with Defendants, Plaintiffs estimated Jimenez' unpaid overtime at about $34,000, plus wage statement and wage notice violations totaling $10,000.

**III.    Unlawful Deduction/ Wage Theft.**

Plaintiffs further allege that Defendants violated NYLL by requiring Plaintiffs to provide their own "tools of the trade," including work tools, without reimbursement. There appears to be some uncertainty about whether some or all of these expenses were reimbursed. The settlement reflects Plaintiffs' determination that establishing these wage theft clams would be challenging and the amount of damages difficult to establish.

**IV.    The Agreements are Fair and Reasonable.**

The parties represent to the Court that the Agreements settling the matter represent a fair and reasonable resolution of a *bona fide* dispute reached as a result of a private mediation at JAMS. For settlement purposes, counsel for Plaintiffs provided counsel for Defendants with a preliminary demand and a chart detailing the calculation of approximate unpaid overtime. Thereafter, on April 3, 2018, the parties and their counsel participated in a day-long mediation with Carol Wittenberg of JAMS.

As reflected in the attached Agreements (Exhibit 1), the case was settled for a total of $74,500.00. Amadis has agreed to settle his claims for a total of $38,019.00 and Jimenez has agreed to settle his claims for a total of $36,481.00. These amounts are inclusive of attorneys' fees and reimbursement of costs, and payable within 30 days of withdrawal of the lawsuit.

Amadis' settlement is to be paid in four checks: (i) $6,200.00, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form will be issued, (ii) $9,150.00, representing reimbursement for lost personal property; (iii) $10,500.00, for alleged liquidated damages and wage statement violations, from which no withholding shall be made, and for which an IRS form 1099 was provided; and (iv) $12,169.00 payable to Rapaport Law Firm, PLLC, for reimbursement of costs and attorneys' fees. Therefore, after reimbursement of costs and attorneys' fees, Amadis will receive $25,850.00.

Jimenez' settlement is to be paid in three checks: (i) $13,812.00, from which estimated deductions will be made for taxes and other withholdings, and for which a W-2 tax form will be issued; (ii) $10,500.00, for alleged liquidated damages and wage statement violations, from which no withholding shall be made, and for which an IRS form 1099 was provided; and (iii) $12,169.00 payable to Rapaport Law Firm, PLLC, for reimbursement of costs and attorneys' fees. Therefore, after reimbursement of costs and attorneys' fees, Jimenez will receive $24,312.00.

At the mediation, Defendants disputed Plaintiffs' estimate of overtime hours. The parties believe that the settlement amounts reflects a fair and reasonable compromise in light of the uncertainties associated with establishing Plaintiffs' precise amount of overtime hours. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)").

The settlement takes into account that the parties were able to reach an agreement before incurring the costs of court appearances, depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

### V.     Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky*, 900 F.Supp.2d at 336.

The settlement provides Plaintiffs' attorneys with reimbursement of costs totaling $3,010.00 and attorneys' fees in the amount of $21,328.00, both split equally between the Plaintiffs. Plaintiffs' counsel seeks approval these fees, which represent approximately 29.8% of the net total settlement amount of $71,490.00, i.e., after reimbursement of $3,010.00 in costs.

Plaintiffs' counsel represents Plaintiffs on a contingent basis, pursuant to retainer agreements, which provide for attorneys' fees of one-third of the net recovery. Copies of the retainer agreements are attached hereto as Exhibit 2. The amount of attorneys' fees is less than the 33% contingency fee provided by the retainer agreements (Exhibit 2).

Co-counsel Rapaport Law Firm's time spent on this matter and the expenses reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibits 3. Exhibit 4 is the history bill of Miller Law, PLLC. Given that the parties were able to reach an early settlement, the lodestar in the attached billing records (Exhs. 3 and 4) is less than the amount of fees requested. This is precisely why Plaintiffs' counsel has discounted the fee from the agreed 33% to approximately 29.8%, even though contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *In Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

Moreover, using the lodestar as a "cross check" further demonstrates the reasonableness of this amount. The lodestar in this case (not including costs and disbursements) is $19,108.17, reflecting a billing rate of $400/hr for Meredith R. Miller of Miller Law, PLLC and of counsel to Rapaport Law Firm, PLLC; $400/hr for Marc Rapaport, the managing member of Rapaport Law Firm PLLC; $115 p/hr for Marcela Cabezas and $100/hr for Ana Alcantara, paralegals at Rapaport Law Firm, PLLC. These rates have been held to be reasonable in the Southern District of New York. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011)(collecting cases on reasonable hourly rates). Further, the resulting multiplier of approximately 1.117 is well below amounts regularly approved. *See Munecas v. Bold Food, LLC,* No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010)("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *see also Sakiko Fukiwara v. Sushi Yasuda Ltd*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").

The attorneys and staff who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport (Rapaport Law Firm, PLLC).**
   Marc Rapaport is the managing member of Rapaport Law Firm, where he began his practice in 1995. He has more than twenty years of experience litigating employment matters on behalf of employees in New York. He received a J.D. from Georgetown University Law Center in 1992. Thereafter, he worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. He represents employees in a broad range of discrimination and wage/hour matters. He is an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. He believes that his clients also benefit from his broader experience beyond the field of employment law, including his experience litigating commercial disputes in state and federal courts.

   For more than 20 years, Mr. Rapaport has endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, he has

particularly focused on representing immigrant workers (superintendents and porters) in the building service industry, which have included, by way of example, the following matters: Armas et al. v. SKYC Management LLC et al., 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., 16-cv-5216 (FB)(PK); Salas et al. v. Phoenix ACV Construction Services, LLC et al., 16-cv-08066 (LAP); Flores et al. v. Claremont Properties, 17-cv001316 (KBF); and Montalvo, et al. v Arkar, et al., 17-cv-06693 (AJN). His requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit.

2. **Meredith R. Miller (Miller Law, PLLC; of counsel to Rapaport Law Firm, PLLC).**
Meredith R. Miller has served as Of Counsel to Rapaport Law Firm for more than twelve years. She received a J.D. from Brooklyn Law School in 2000. Thereafter, she started her legal career in Albany, clerking for the New York Court of Appeals. She then served as a litigation associate at Proskauer Rose, LLP in New York City. In 2004, she accepted a teaching fellowship at Temple Law School in Philadelphia, which began her career as a law professor. Ms. Miller teaches contract, business and employment law at the Touro College, Jacob D. Fuchsberg Law Center in Long Island, New York. She has written and lectured extensively on these subjects. Additionally, she has served as co-counsel with Mr. Rapaport on about a dozen cases representing immigrant workers (most often superintendents and porters in the building service industry). Her requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit.

3. **Marcela Cabezas (Rapaport Law Firm, PLLC).**

Marcela Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in the firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for the firm's Spanish-speaking clients.

4. **Ana Alcantara (Rapaport Law Firm, PLLC).**

Ana Alcantara has been a paralegal at Rapaport Law Firm since November 2017. Ms. Alcantara graduated from SUNY Plattsburgh with a B.S. Ms. Alcantara speaks fluent Spanish. Because of her language skills, Ms. Alcantara serves an integral role in representation of wage & hour plaintiffs.

We respectfully request that the Court approve the Agreements, as well as the amount of legal fees requested herein. Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

Meredith R. Miller

Encls. (Exhibs 1 – 4)

cc: David L. Weissman, Esq. (*Via ECF only*)
    Jill R. Cohen, Esq. (*Via ECF only*)